**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **RONALD BARKHORN,** | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-10-750 |
| **PORTS AMERICA CHESAPEAKE, LLC,** | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

*I. Background*

This case was originally filed *pro se* by Ronald Barkhorn as well as twelve other individuals, all of whom either presently work or worked in the past in the same stevedoring gang at the Port of Baltimore in Maryland. The case involves claims of discrimination under the Americans with Disabilities Act ("ADA") and retaliation for filing an administrative charge of discrimination; it also involves a claim of racial discrimination, a claim of disability discrimination under Maryland state law, and a claim of disability discrimination under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Am. Compl., ECF No. 83.) Over the course of the proceedings, the following Plaintiffs sought and were granted voluntary dismissal: John Zelinski, Mark Hagopian, Francesco Sozio, Joe Williams, Paul Singer, Robert Smoot, and Jim Griffin. Of the six remaining Plaintiffs, Terry Neblitt and James Ruff have continued to proceed *pro se*; the other four, Ronald Barkhorn, John Delawder, Rick Delawder, and Mike Schultz, are represented by counsel. However, Neblitt and Ruff requested and received permission to adopt the response to the motion for summary judgment filed by counsel for

Barkhorn, the two Delawders, and Schultz. (ECF Nos. 70, 71.) The amended complaint added the section 504 claim only as to the latter four.

Two Defendants were named in the suit: Ports America of Baltimore (Chesapeake) and Steamship Trade Association of Baltimore. The Ports America Defendant has pointed out to the Court that it was incorrectly sued as Ports America Baltimore, Inc., when its present name is Ports America Chesapeake, LLC (Defs.' status rept. 1, ECF No. 34), and Ports America Chesapeake, LLC, is the successor in interest to Ports America of Baltimore (Defs.' Mot. Summ. J. Supp. Mem. 1, ECF No. 36). In its order accompanying this memorandum, the Court will order the docket be changed to reflect the proper name of the Defendant. Together, Defendants have moved for summary judgment (ECF No. 36), and the matter has been thoroughly briefed by the parties (ECF Nos. 84, 93, 98). No hearing is necessary. Local Rule 105.6 (D. Md. 2011). The motion will be granted in part and denied in part.

## II. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing

party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## III. Analysis

Ports America Chesapeake ("PAC") and Steamship Trade Association of Baltimore, Inc. ("STA"), have stated as grounds for summary judgment the improper pleading of STA, the lack of exhaustion of the racial discrimination claim, the lack of exhaustion of the ADA claim, the unmeritorious nature of the ADA claim, the lack of exhaustion of the Maryland state law discrimination claim, the unmeritorious nature of the retaliation claim, the absence of evidence of damages, and (in Defendants' reply) the necessity for this Court to give substantial deference to the arbitrator's decision in the labor union's grievance proceeding. Each issue is treated in turn.

### A. Proper Party Defendant

Steamship Trade Association is conceded by Plaintiffs not to be a proper party defendant because it is not an employer of the Plaintiffs in this suit based upon allegations of employment discrimination. Accordingly, Steamship Trade Association will be dismissed from the case. This leaves only Ports America Chesapeake, LLC ("PAC"), as a defendant.

### B. Racial Discrimination

Count II is based upon a request for enforcement of a consent decree entered by this Court in *United States v. ILA Locals 829 & 858*, 319 F. Supp. 737 (D. Md. 1970), *aff'd*, 460 F.2d

3

497 (4th Cir. 1972). That prior case concerned racial discrimination. Plaintiffs concede they did not administratively exhaust their claim of racial discrimination prior to filing this case. (Pls.' Opp. 18.) They request that Count II be dismissed without prejudice in order to maintain this Court's continuing jurisdiction in the prior case. (*Id.* 29.) This is a better course of action than the judgment as a matter of law requested by PAC. Accordingly, Count II will be dismissed without prejudice.

### C. Exhaustion of ADA Claim

By virtue of 42 U.S.C. § 12117(a), a claim of discrimination under the ADA is subject to the same requirements of administrative exhaustion with the Equal Employment Opportunity Commission ("EEOC") as are applicable to claims of employment discrimination under Title VII of the Civil Rights Act of 1964. For a variety of reasons, PAC contends the Plaintiffs' claim of discrimination was not exhausted.

First, PAC argues Plaintiffs failed to plead that they received or were entitled to receive a "right to sue" letter. Relying upon *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134 (4th Cir. 1995), PAC contends this failure to plead defeats subject matter jurisdiction. (Defs.' Mot. Summ. J. 17-18, ECF No. 36.)

A close look at the *Davis* case reveals that the language cited by PAC was not the holding of the case. Instead, the precise holding of the case, in relevant part, was that where the district court would not have had original jurisdiction over the plaintiff's claim, it was equally without removal jurisdiction. 48 F.3d at 140. The opinion does contain some language that, unfortunately, perpetuates an error in dictum from a prior case. The *Davis* opinion states, "We have long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Id.* It cites the earlier case of *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844 (4th Cir. 1979), as authority for this pleading

4

requirement. In turn, the *United Black Firefighters* case misstated the statutory requirements of 42 U.S.C. § 2000e-5(f)(1) when it said, "With regard to the applicants, a plaintiff in a civil action under Title VII must allege and prove filing of a timely charge of discrimination with the Equal Opportunity Commission [sic] together with receipt of, and action on, a statutory notice of his right to sue." 604 F.2d at 847 (citing *only* 42 U.S.C. § 2000e-5(f)(1)). When one examines section 2000e-5(f)(1), however, one does not find a pleading requirement. The statute provides, in part:

> If a charge filed with the Commission pursuant to subsection (b) of this section, is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

Additionally, it is notable that none of the other cases cited by *Davis* made any mention of a pleading requirement. *See Baldwin Co. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982); *Bullard v. Sercon Corp.*, 846 F.2d 463 (7th Cir. 1988); *Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1985), *amended* 784 F.2d 1407; *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091 (4th Cir. 1982). It seems clear, then, that neither *Davis* nor *United Black Firefighters* "held" that a plaintiff must allege the receipt or entitlement to receipt of a right-to-sue letter in order for a federal district court to have subject matter jurisdiction. That is not to say that a Title VII plaintiff need not satisfy the jurisdictional

prerequisites established in section 2000e-5. The Supreme Court emphasized that is still the case in *Baldwin Co. Welcome Ctr.*, when it noted the following:

> In Zipes, we held that the requirement of a timely filing of a charge of discrimination with the EEOC under 42 U.S.C. § 2000e-5(e) is not a jurisdictional prerequisite to a suit in district court and that it is subject to waiver and equitable tolling. [Respondent's] argument [that equitable tolling is mandated by Zipes] is without merit, for we did not in Zipes declare that the requirement need not ever be satisfied; we merely stated that it was subject to waiver and tolling.

466 U.S. at 152 n.6.

In the end, the Court must satisfy itself that all jurisdictional prerequisites have been met by Plaintiffs. The instant case was initiated and litigated through the close of discovery by *pro se* Plaintiffs, who eventually were able to engage an experienced lawyer to represent them. With the exception of the addition of Count IV by Plaintiffs' counsel, the complaint and amended complaints are *pro se* creations. Thus, Plaintiffs' pleadings are held to a less stringent standard than applied to attorney-drafted pleadings. It is clear that Plaintiffs have not included in their pleadings any mention of the right-to-sue notice. However, this important piece of paper was filed with the Court as an attachment to their original complaint. (ECF No. 1.) In fact, the document indicates that a copy of it was sent by the EEOC to PAC's present counsel. It is at least somewhat disingenuous for PAC to claim this Court lacks jurisdiction because of a pleading technicality when, in fact, its counsel has been in possession of the very document at issue. This first contention as to exhaustion is meritless.

PAC's second argument with regard to exhaustion is that none of the Plaintiffs other than Barkhorn filed an EEOC charge; consequently, it argues, none of the other Plaintiffs have exhausted their claims of discrimination. (Defs.' Mot. 18.) Plaintiffs rely upon the "single-filing rule" to counter PAC's argument. (Pls.' Opp. 16-17.)

The single-filing rule, which permits intervenors in discrimination suits to rely upon the original plaintiff's EEOC charge rather than requiring each to file an individual EEOC charge, has been "long applied" in the Fourth Circuit to class actions. *See, e.g.*, *Chisholm v. U.S. Postal Service*, 665 F.2d 482, 490 n.11 (4th Cir. 1981), *cited in King v. McMillan*, 233 F. App'x. 242, 244 (4th Cir. 2007) (unpublished). The present case is not a class action but a suit by a number of individuals who now work or worked together in the past in a stevedoring gang. Thus far, the Fourth Circuit has not spoken on whether the single-filing rule may be applied in nonclass actions. In the *King* case, the Fourth Circuit recognized that other circuits had allowed application of the single-filing rule to nonclass actions. *See King*, 233 F. App'x. at 244 (citing *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir. 1994); *Snell v. Suffolk*, 782 F.2d 1094, 1100 (2d Cir. 1986); *Ezell v. Mobile Housing Bd.*, 709 F.2d 1376, 1381 (11th Cir. 1983); *DeMedina v. Reinhardt*, 686 F.2d 997, 1012-13 (D.C. Cir. 1982); *Crawford v. United States Steel Corp.*, 660 F.2d 663, 665-66 (5th Cir. 1981); *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876, 882-83 (8th Cir. 1977)). *See also Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1198 (10th Cir. 2004) (applying single-filing rule to nonclass action). Only the Third Circuit was found at the time of the *King* decision to restrict the single-filing rule's application to class action. *See Whalen v. W.R. Grace & Co.*, 56 F.3d 504, 507 (3d Cir. 1995).

When applied by courts, the single-filing rule "allows plaintiffs who have not exhausted the administrative requirement of filing with the EEOC to join in a lawsuit with other plaintiffs who have exhausted the requirement, provided that all plaintiffs' claims are substantially similar and that the EEOC charge itself gave notice of the charge's collective nature." *White v. BFI Waste Services, LLC*, 375 F.3d 288, 293 (4th Cir. 2004). The case now before the Court meets those requirements. All Plaintiffs claim they were discriminated against because one or more of the members of their stevedoring gang were disabled. Because work orders are given to a gang

7

rather than individual members, all members of a gang are equivalently disadvantaged if PAC issues fewer work orders to the gang. Therefore, all Plaintiffs' claims in this case are substantially similar. In this regard, the fact that individual Plaintiffs may be paid a different hourly rate and might, consequently, be entitled to different amounts of damages is not material to whether their claims are substantially similar in nature.

The other requirement is that the EEOC charge must itself have given notice of the charge's collective nature. That, too, has been met. The charge filed by Barkhorn on December 17, 2008, described the gang hiring system, noted that PAC's allegedly discriminatory policy "disadvantages the entire gang," and stated his belief that he "and others are discriminated against . . . ." (Defs.' Mot. Ex. 10.) In addition, Barkhorn's rebuttal, dated March 19, 2009, to Defendant's response to the EEOC investigation stated the following:

> [T]he entire Gang is unanimous in their support for this charge and the internal grievance filed with ILA Local 333 . . . . The entire gang supports this charge and was O.K. with me handling the paper work. In fact when I came to the EEOC Office and told the info. Officer the particulars, she said the entire Gang does not need to file a charge as individuals, you can file a charge on behalf of the entire Gang. This is what I did in order to facilitate a more speedy resolution of alleged ADA or other EEOC violations.

(Compl. unnumbered exhibit, ECF No. 1.)

Another document presumably submitted to the EEOC and dated April 4, 2009, refers to the EEOC charge number and then states:

> The following Members of Paul Singer's Gang #8 were and are a party to the above mentioned ADA and ADEA charges filed by a member of Singer's Gang on behalf of all affected gang members. All Singer Gang members have suffered lost wages and benefits as a result of discrimination and retaliation based upon Disability and Age and are asking for full restitution of wages and benefits denied by these unlawful acts.

This document was then signed by each of the named Plaintiffs in this suit. (Compl. unnumbered exhibit.) Finally, the collective nature of the EEOC charge was recognized by the

EEOC in its determination that PAC's utilization of "light duty" as a factor to select and hire gangs violates the ADA. (Compl. unnumbered exhibit.) The EEOC's determination was not limited to the effect of PAC's policy on Barkhorn. Considering all of these circumstances, the single-filing rule is appropriately applied in the instant case to satisfy the exhaustion requirement on behalf of all Plaintiffs, and the Court so holds.

The third argument on the issue of exhaustion advanced by PAC is that the EEOC charge did not mention retaliation and, therefore, Plaintiffs cannot press a claim of retaliation in this suit. (Defs.' Mot. 18.) The Fourth Circuit has addressed this precise issue in *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992), which held that a Title VII plaintiff who had not raised in her administrative proceedings the issue of retaliation due to filing an EEOC charge could nevertheless raise the issue of retaliation for the first time in federal court. *Id.* at 590. In actuality, however, this issue was brought to the EEOC's attention. The letter signed by all Plaintiffs on April 4, 2009, and submitted to the EEOC specifically refers to "discrimination and retaliation stemming from an injury to a member April 2008 and subsequent EEOC Charges respectively." Moreover, Barkhorn wrote the EEOC investigator two weeks after the EEOC rendered its determination favorable to Plaintiffs, and in his letter, he specifically notified the investigator that things had grown worse since the EEOC charge was filed and since the determination was made. (Compl. unnumbered exhibit.) The matter had not been closed by the EEOC at that point because it was attempting conciliation and the purpose of Barkhorn's letter was to offer calculations of Plaintiffs' damages. PAC's third argument pertaining to exhaustion is without merit. The Court concludes that Plaintiffs have exhausted their ADA claim.

### D.  *Exhaustion of State Law Claims*

PAC also argues that Plaintiffs failed to exhaust their claim under Maryland state law prohibiting disability discrimination. The law in question, however, is satisfied by Plaintiffs'

9

EEOC charge that covers the same, allegedly discriminatory conduct. *See* Md. Code Ann., State Gov't § 20-1013 (LexisNexis 2009) ("[A] complainant may bring a civil action against the respondent alleging an unlawful employment practice if . . . the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent . . . .").

### E.  Sanction of Dismissal for Plaintiffs Who Failed to Provide Discovery

Of the six remaining Plaintiffs in the case (Barkhorn, Neblitt, Ruff, Schultz, Rick Delawder, and John Delawder), PAC seeks to have Ruff and Schultz dismissed from the case for an alleged failure to provide discovery. (Defs.' Mot. 20-23.)  Defense counsel has provided an affidavit that sets forth his unsuccessful attempts to depose the two, to obtain their answers to interrogatories, and to obtain their production of documents. (*Id.* Ex. 30.)  As a result, PAC now seeks dismissal of these two Plaintiffs under Rules 37(d) and 41(b), Federal Rules of Civil Procedure.

Preliminarily, dismissal for a discovery violation seems to be within the exclusive province of Rule 37, which specifically deals with failure to provide discovery, and not under the aegis of Rule 41(b), which is focused on involuntary dismissals for want of prosecution. *See Société Internationale pour Participations v. Rogers*, 357 U.S. 197, 206-08 (1958).  The standard for dismissal of a party for discovery violations under Rule 37(d) has four elements:

   1) whether the noncomplying party acted in bad faith;
   2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce;
   3) the need for deterrence of the particular sort of noncompliance; and
   4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).

What is notable about application of this test to the present case is the second element dealing with prejudice to PAC. Nowhere in its argument for dismissal is any assertion by PAC of prejudice, and the Court will not presume prejudice exists. That is particularly so in this case where PAC made the following representation to the Court in its status report:

> Notwithstanding the lack of response to discovery requests by the Plaintiffs, the Defendants do not believe additional discovery is necessary. For the most part, all of the facts in this case are known to the parties as a consequence of a continuing arbitration dealing with the same type of complaint as a result of a grievance filed by Mr. Barkhorn under the collective bargaining agreement grievance process.

(ECF No. 24, ¶ 1.) The absence of prejudice does not excuse Ruff's and Schultz's noncompliance, but PAC's advocating their dismissal after essentially telling the Court their noncompliance does not really matter is inappropriate. This request will be denied.

### F. Merits of the Retaliation Claim

Having sorted through all of the preliminary matters, the Court now turns to the substantive issue of whether a genuine dispute of material fact exists on Plaintiffs' ADA claim. Fed. R. Civ. P. 56(a). Plaintiffs have claimed discrimination against them by PAC because of Plaintiffs' association with a disabled person. The resolution of this claim turns preliminarily on the state of the law during the time in which Plaintiffs claim harm.

Prior to January 1, 2009, the ADA prohibited the following:

> No covered entity shall *discriminate against a qualified individual with a disability because of the disability of such individual* in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added). Pertinent to this case, the ADA defined "discriminate" as

> excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

42 U.S.C. § 12112(b)(4). Read together, it is difficult to make sense of subsections (a) and (b)(4). Although the wording of the second subsection suggests that the intent of Congress in subsection (b)(4) was to include within the law's sweep nondisabled, qualified people who were discriminated against because of association with a disabled individual, the plain wording of subsection (a) clearly limits the scope of the prohibition to "discrimina[tion] against a qualified individual with a disability." This latter interpretation is reinforced by subsequent amendment to subsection (a), which now provides:

> No covered entity shall *discriminate against a qualified individual on the basis of disability* in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added). The amendment became effective January 1, 2009. Subsection (b) was amended at the same time to define the term "discriminate against a qualified individual on the basis of disability" in subsection (a) as including all of the prior definitions of subsection (b) formerly applied to "discriminate," including that in subsection (b)(4) at issue here. Regardless, it is not the Court's province to edit the statute to achieve coherence.

Plaintiffs' claim of associational discrimination under the ADA embraces conduct both before and after the effective date of the amendment to subsection (a). (Am. Compl. Count I, ECF No. 83.) To the extent Plaintiffs are claiming harm to them because of association with a disabled person, the plain language of the pre-amendment statute appears to foreclose their claim for all conduct prior to January 1, 2009. After January 1, 2009, the claim of associational discrimination is validly asserted regardless of whether Plaintiffs themselves are disabled.

Once past this definition of appropriate time period for claiming associational discrimination, the Court is faced with the question of whether Plaintiffs are individuals that the statute is designed to protect. PAC has cited a Fourth Circuit case for the proposition that the associational discrimination ban found in the ADA "was intended to protect qualified individuals from adverse job actions based on 'unfounded stereotypes and assumptions' arising from the employee's relations with particular disabled persons." *Freilich v. Upper Chesapeake Health*, 313 F.3d 205, 215 (4th Cir. 2002). What the Fourth Circuit did not say in *Freilich* was that the statute was meant to be read narrowly to exclude the type of claim made here. Notable also is the factual distinction of this case from the *Freilich* case or the cases on which it relied. Each of those cases claimed associational discrimination based on an individual's advocacy on behalf of persons with disabilities. *Id.* at 215-16. Here, Plaintiffs were or are members of the same stevedoring gang claiming the gang was discriminated against in assignment of work orders because one or more of its members were disabled. This is simply not analogous to *Freilich*. Nor is it analogous to the other case cited by PAC, the Seventh Circuit's opinion in *Larimer v. IBM Corp.*, 370 F.3d 698 (7th Cir. 2004), which in any event, is unpersuasive. Plaintiffs are included within the post-January 1, 2009, statute's scope by its terms.

Thus, the Court is left with a genuine dispute of material fact on the question of whether PAC's practice of enforcing a policy that changed the order in which work orders were assigned to the various gangs because of injuries to gang members discriminated on the basis of disability. PAC claims it is merely enforcing safety rules by penalizing unsafe conduct that could result in injury or death. (Defs.' Mot. Supp. Mem. 24.) And perhaps that will be the final conclusion, but a reasonable fact-finder could find either way based on the evidence currently before the Court. At this stage of the proceedings, the Court is required to draw all reasonable inferences in the nonmovants' favor. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225,

230 (4th Cir. 2008). Consequently, the ADA claim is not properly resolved by summary judgment.

### G. Merits of the Retaliation Claim

It is equally inappropriate to decide on summary judgment the claim that Plaintiffs were retaliated against because of their EEOC charge. PAC's argument asks this Court to agree with its perspective on the facts. Resolution of this issue must await trial on the merits.

### H. Evidence of Damages

PAC contends that Plaintiffs have not provided evidence they have suffered any damages. Plaintiffs contend otherwise, citing John Delawder's deposition testimony and records of straight and overtime wages for the years 2008, 2009, and 2010. Although individual Plaintiffs may face proof problems, sufficient evidence of loss of monetary compensation exists to go to trial.

### I. Effect of Arbitrator's Decision in Grievance Proceeding

The last argument made by PAC for summary judgment is that the arbitrator's decision in the grievance proceeding should be given substantial deference by the Court in this statutory discrimination suit. (Defs.' Mot. 7.) The simple answer to this argument is that the arbitrator did not adjudicate any claims arising under the ADA. The arbitrator interpreted contractual terms in the collective bargaining agreement ("CBA") to determine if PAC's manner of assigning gangs violated the agreement. (Defs.' Reply Ex. 1.) Specifically, the arbitrator stated the issues to be the following:

> 1. Did the Union have standing to process the grievance filed by Grievant as a challenge to the Employer's system of hiring gangs?
> 2. If so, did the Employer's system of hiring gangs violate Article X of the Agreement?
> 3. If so, what shall be the remedy?

(*Id.* at 4.)  Although the Court would be inclined to accord the arbitrator's opinion some deference with respect to interpretation of the CBA, it is not necessary to interpret the CBA to determine if PAC's method of ordering gangs violates the ADA.  And notably, the nondiscrimination provision of the CBA, Article XV, does not refer to disability.  (*Id.* at 7.)  Moreover, even though the arbitrator's decision made reference to "discrimination" and "retaliation," the opinion never employed the use of established standards recognized by federal courts for evaluating ADA, or for that matter, Title VII, claims.  In short, it is unpersuasive for the resolution of any claims presently before the Court.

### III. Conclusion

By separate order STA will be dismissed as a party to this lawsuit.  Count I will be limited to conduct occurring on or after January 1, 2009.  Also, Count II will be dismissed without prejudice.  Otherwise, the motion for summary judgment will be denied.

DATED this 26th day of September, 2011.

BY THE COURT:

/s/
James K. Bredar
United States District Judge