IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALD BARKHORN, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.: JKB-10-750 |
| PORTS AMERICA CHESAPEAKE, LLC | * | |
| | * | |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR RECONSIDERATION OF PLAINTIFFS RONALD BARKHORN, MIKE SCHULTZ, JOHN DELAWDER, AND RICK DELAWDER

Plaintiffs Ronald Barkhorn, Mike Schultz, John Delawder, and Rick Delawder, by and through their undersigned counsel, and pursuant to Local Rule 105.10, hereby move this Honorable Court to reconsider part of its Memorandum and Order entered on September 27, 2011, and, in support thereof, state as follows:

### I. INTRODUCTION

In its Memorandum and Order, this Honorable Court dismissed Count I of Plaintiffs' Amended Complaint to the extent that it asserted claims for association discrimination under the ADA based upon events occurring <u>before</u> January 1, 2009. *See* Mem. Op. at 11-13, 15. Conversely, Plaintiffs' claims for association discrimination based upon events occurring on or after January 1, 2009 remain fully intact. *See id.* at 13 ("Plaintiffs are included within the post-January 1, 2009, statute's scope by its terms.").

As this Honorable Court is well aware, the ADA was amended, effective January 1, 2009, to broaden its scope. The Court states in its September 27, 2011 Memorandum that, prior to this amendment, the statute was not broad enough to include the association discrimination claims of Plaintiffs herein. According to the Court, "To the extent Plaintiffs are claiming harm to them because of association with a disabled person, the plain language of the pre-amendment statute appears to foreclose their claim for all conduct prior to January 1, 2009." *Id.* at 12.

Plaintiffs respectfully disagree with the Court's holding in this regard. While the January 1, 2009 amendments to the ADA make absolutely clear that Plaintiffs' claims for association discrimination are within the purview of the Act, Plaintiffs take the position, respectfully, that this was likewise true under the former version of the Act. Accordingly, Plaintiffs now seek this Court's reconsideration of its ruling on this issue for the reasons set forth below.

## II. LEGAL ARGUMENT

Prior to its January 1, 2009 amendment, 42 U.S.C. § 12112 of the ADA read, in pertinent part, as follows:

Discrimination

(a) General rule. No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

(b) Construction. As used in subsection (a), the term "discriminate" includes—

(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this title (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

(3) utilizing standards, criteria, or methods of administration—

(A) that have the effect of discrimination on the basis of disability; or

(B) that perpetuate the discrimination of others who are subject to common administrative control;

(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

(5) (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;

(6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and

(7) failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job

> applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure).

*Id*. at § 12112(a)-(b).

With respect to the interrelationship between subsections (a) and (b) of the former version of 42 U.S.C. § 12112, Plaintiff certainly recognizes that the statute was not as artfully drafted as it could have been.  Upon its review of this interrelationship, this Court took the position that subsection (b)(4), under the pre-amendment version of the statute, required the Plaintiffs themselves to have been disabled in order for their association discrimination claims to be viable.[1]  *See* Mem. Op. at 12.  However, to the best of Plaintiffs' knowledge, subsection (b)(4) has never before been construed so as to require that the employee who was subjected to discrimination be disabled along with the disabled individual with whom he or she was associated.  Indeed, based upon Plaintiffs' research, there are only two (2) cases in which this particular issue was even raised, and, in both cases, the court ruled that the plaintiff need <u>not</u> personally be disabled.

In the case of *Doe v. An Oregon Resort*, 2001 U.S. Dist. LEXIS 17449 (D. Or. May 10, 2001), the U.S. District Court for the District of Oregon, in entering judgment for the plaintiff, stated as follows:

---

[1] The Court indicated that it made this finding, at least in part, because "it is not the Court's province to edit the statute to achieve coherence." Mem. Op. at 12. However, it should be noted that, in the case *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198 (1949), the U.S. Supreme Court held that, while ordinarily statutory definitions control the meaning of statutory words, this rule does <u>not</u> apply where its application creates obvious incongruities in the language of the statute or destroys one of its major purposes. *See id*. at 201.

> Defendant argues that because plaintiff is not actually himself disabled, he is not entitled to protection for association discrimination. This argument was rejected by the court on summary judgment. To construe the statute as defendant does would render protection for those discriminated against because of their association with a person with a disability meaningless.

*Id.* at *8 n.1. And in *Morgenthal v. AT&T Co.*, 1999 U.S. Dist. LEXIS 4294 (S.D.N.Y. April 6, 1999), the U.S. District Court for the Southern District of New York held as follows regarding this issue:

> Defendant <u>incorrectly</u> interprets [42 U.S.C. § 12112(b)(4)] to apply only to employees who are themselves disabled or to situations where the employee is fired or not hired because of her association with a disabled person. (Def.'s Reply Mem. Law at 5-6.) The regulations implementing the ADA, however, state that "this provision is intended to protect any qualified individual, whether or not that individual has a disability." 29 C.F.R. § 1630.8 (1998).

*Morgenthal*, 1999 U.S. Dist. LEXIS 4294, at *5 (emphasis added).

It is important to note that the quoted regulation in the above passage from the *Morgenthal* case, which actually comes from the Appendix to the regulations, has not changed to this very date. Specifically, despite the recent overhaul of the ADA regulations by the EEOC earlier this year, this part of the Appendix concerning association discrimination remained unaltered. It reads, as it always has, as follows: "This provision is intended to protect any qualified individual, <u>whether or not that individual has a disability</u>, from discrimination because that person is known to have an association or relationship with an individual who has a known disability." 29 C.F.R. Part 1630 Appx. at § 1630.8 (emphasis added). As such, dating back to the EEOC's initial issuance of its ADA regulations and continuing through to the present day, the

EEOC has consistently taken the position that subsection (b)(4) does <u>not</u> require the employee who is the subject of discrimination to personally be disabled.

Significantly, this interpretation of subsection (b)(4) is supported by the language and structure of the statute itself. Looking at the pre-amendment version of the 42 U.S.C. § 12112, if each clause in subsection (b) applied with equal force to situations in which an employer had, as set forth in subsection (a), "discriminate[d] against a qualified individual with a disability," then why would congress have felt obligated to repeat the phrase "qualified individual with a disability" in subsections (b)(5)(A) and (b)(5)(B)? And, since the phrase is in subsections (b)(5)(A) and (b)(5)(B), then why is it not repeated in any of the other parts of subsection (b)? Why, instead, do the other parts of subsection (b) refer to disability discrimination in various forms against various types of people? One can safely assume that this was because each part of subsection (b) was <u>not</u> delineating the various ways in which an employer can "discriminate against a qualified individual with a disability," but, instead, was delineating the various ways in which an employer can "discriminate."

One such way for an employer, like Ports America Chesapeake, LLC, to "discriminate" against its employees, like Plaintiffs herein, is set forth in subsection (b)(4), and, respectfully, it is Plaintiffs' position that this has remained equally true both before and after January 1, 2009.

### III. CONCLUSION

For these reasons and in the interests of justice, Plaintiffs Ronald Barkhorn, Mike Schultz, John Delawder, and Rick Delawder hereby respectfully request that this

6

Honorable Court reconsider its decision to dismiss Plaintiffs' association discrimination claims in Count I to the extent that they are based on events which pre-date January 1, 2009, and rule instead that Count I may be pursued in its entirety.

>Respectfully submitted,

>_____/s/_____
>Neil R. Lebowitz, Bar No.: 25155
>Law Office of Neil R. Lebowitz, LLC
>10440 Little Patuxent Pkwy., Suite 570
>Columbia, Maryland 21044
>410-730-9010
>Counsel for Plaintiffs Ronald Barkhorn, Mike Schultz, John Delawder, and Rick Delawder

CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on this   11th   day of October, 2011, a copy of the forgoing Motion was served electronically upon Michael J. Collins, Esquire, The Law Office of Michael J. Collins PC, 7104 Biter Lane, Highland, Maryland 20777, Counsel for Defendants, and that on the   12th   day of October, 2011, a copy of the Motion will be served by first-class mail, postage prepaid, upon the following *pro se* Plaintiffs:

Mr. Terry Neblitt
60 S. Dundalk Avenue
Baltimore, Maryland 21222

Mr. James Ruff
1420 Towson Street
Baltimore, Maryland 21230

>_____/s/_____
>Neil R. Lebowitz