IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
RONALD BARKHORN, ET AL.        *
              Plaintiffs       *
                               *
      v.                       *      CIVIL NO. SKG-10-750
                               *
PORTS AMERICAN CHESAPEAKE, LLC *
              Defendant.       *
```

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs, Ronald Barkhorn, John Delawder, Richard Delawder, Michael Shultz, and James Ruff, are former and current employees of defendant, Ports America Chesapeake, LLC ("PAC"). (ECF No. 83, 10-11). Plaintiffs filed suit against PAC on March 25, 2010.(ECF No. 1). The current amended complaint alleges violations of the associational provision of Title I of the ADA, retaliatory treatment following Barkhorn's EEOC filing, race discrimination under Title VII, disability discrimination under Maryland law, and violations of § 504 of the Rehabilitation Act including associational discrimination violations. (ECF No. 83).

On March 25, 2011, PAC filed a motion for summary judgment, arguing, *inter alia*, that plaintiffs' ADA claim lacked merit. (ECF No. 36-1, 24-26). By order dated September 26, 2011, the Court granted PAC's motion with respect to plaintiffs' Title VII

claim without prejudice,[1] and limited plaintiffs' ADA claims of associational discrimination to discrimination occurring on or after January 1, 2009, but denied summary judgment as to all other claims. (ECF No. 104).

On January 11, 2012, PAC filed the pending motion for summary judgment against Richard Delawder, asserting four grounds. (ECF No. 116). First, based on the prior ruling that no ADA associational right existed prior to January 1, 2009, defendant argues that Mr. Delawder has no ADA associational claim because he retired on June 30, 2008. Defendant argues that the prior ruling bars Richard Delawder's associational claims under the *Rehabilitation Act* as well as the ADA. (ECF No. 116-1, 5). However, the defendant did not move for summary judgment on the Rehabilitation Act claim. Moreover, the Court's prior ruling as to the January 1, 2009 cut-off date was limited to the ADA. (See ECF No. 103, 11-14; ECF No. 104). (ECF No. 116-1, 4-6). Second, the defendant argues that Mr. Delawder's claim under the *Rehabilitation Act* is similarly without merit, as it is subject to the same interpretation as the ADA. Third, defendant challenges Delawder's associational claims under

---

[1] Plaintiffs conceded that they failed to administratively exhaust their claim of racial discrimination under Title VII prior to filing the case, and requested that this claim be dismissed without prejudice. (ECF No. 103, 4). The Court did so.

Maryland law, contending that the Maryland anti-discrimination statute, Md. Code Ann. State Gov't § 20-606(a), does not contain a cause of action for associational discrimination.  (ECF No. 116-1, 6).  Last, defendant argues that Richard Delawder's retaliation claim lacks merit because he retired before Barkhorn filed the EEOC charges. (Id. at 7).

Mr. Delawder's response only addresses defendant's first argument.  He contends that the prior ruling as to ADA associational discrimination, upon which defendant's first argument rests, conflicts with applicable case law and regulations.  (ECF No. 124, 2).

For the reasons set forth below, the Court DENIES IN PART and GRANTS IN PART PAC's motion.

## I.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The only facts that are properly considered "material" are those that might affect the outcome of the case under the governing law.  Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.

Fed. R. Civ. P. 56(a); <u>Pulliam Inv. Co. v. Cameo Props</u>., 810
F.2d 1282, 1286 (4th Cir. 1987).  Where there are no factual
issues pertinent to the defendant's motion on the principal
claims in dispute, the Court must determine whether summary
judgment is appropriate as a matter of law. Fed. R. Civ. P.
56(c); <u>see also</u> <u>Nixon Uniform Service, Inc. v. American</u>
<u>Directory Service Agency, Inc.</u>, 693 F. Supp. 367, 368 (D. Md.
1988).

**II.  Discussion**

There are no disputes of fact before the Court. The issues
raised are purely legal, and the Court rules on each as a matter
of law.

**A. Associational Discrimination Under the ADA**

First, the Court must determine whether Mr. Delawder's ADA
associational discrimination claims are foreclosed based on this
Court's prior ruling that ADA associational discrimination
claims are limited to pre-January 1, 2009 actions.  For the
reasons set forth below, and pursuant to this Court's authority
under Rule 54(b) of the Federal Rules of Civil Procedure, the
Court hereby amends the prior ruling as to pre-2009 ADA
associational discrimination claims, and denies summary judgment
as to those claims.

The Court finds that Congress intended to prohibit
associational discrimination as part of the original 1990 ADA

Act.

42 U.S.C. § 12112(b)(4) prohibits discrimination by "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual *with whom the qualified individual is known to have a relationship or association*[.]"[2] (emphasis added). This clause was part of the original ADA as enacted in 1990. See P.L. 101-336, §102(b)(4), 104 Stat. 327, 332 (1990). The original ADA also included the following provision in § 12112(a) of the same section:

> No covered entity shall discriminate against a qualified individual *with a disability because of the disability of such individual* in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

P.L. 101-336, § 102(a), 104 Stat. 327, 331-32 (1990) (emphasis added). The conflict in the plain language between subsection (b)(4) and the original subsection (a) is apparent.   In 2008, § 12112(a) was amended to read as follows:

> No covered entity shall discriminate against a qualified individual *on the basis of disability* in regard to job application

---

[2] The ADA defines a qualified individual as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

> procedures, the hiring, advancement, or
> discharge of employees, employee
> compensation, job training, and other terms,
> conditions, and privileges of employment.

42 U.S.C. § 12112(a); P.L. 110-325, §§ 5(1)(a) and 8, 122 Stat.

3553, 3557, 3559 (2008).  This new language, of course,

recognizes discrimination against a qualified individual due to

the disability of others, not simply the disability of the

qualified individual himself or herself.  The amendment

reconciled the apparent conflict between subsection (b)(4) and

subsection (a).

However, under accepted principles of statutory

interpretation, the statute, prior to the amendment is properly

read as establishing a claim of associational discrimination

when originally passed.  First, the canon of statutory

interpretation known as *generalia specialibus non derogant*,

meaning general provisions do not qualify specific ones, applies

here.  See, e.g., Townsend v. Little, 109 U.S. 504, 512, 3 S.

Ct. 357, 27 L. Ed. 1012 (1883) (noting that when "general and

specific provisions" are "in apparent contradiction, whether in

the same or different statutes," the specific will "qualify . .

. the general"); S.C. Dep't of Health & Envtl. Control v.

Commerce & Indus. Ins. Co., 372 F.3d 245, 258 (4th Cir. 2004)

("Pursuant to elementary principles of statutory construction,

unless the legislature has indicated that it intends otherwise,

a specific statutory provision controls a more general one."). Subsection (a) of § 12112 states the "[g]eneral rule" while subsection (b) sets out the "[c]onstruction [of the general rule.]" See 42 U.S.C. § 12112(a)-(b).  Subsection (b)(4) pertains explicitly and specifically to associational discrimination. See 42 U.S.C. § 12112(b)(4).  Thus, where the question of associational discrimination before 2009 is concerned, subsection (b)(4) takes precedence over subsection (a).

Second, considering § 12112 *as a whole,* not just focusing on § 12112(a), similarly results in a finding of associational discrimination.  The leading treatise on statutory interpretation explains that

> A statute is passed as a whole and not in
> parts or sections and is animated by one
> general purpose and intent.  Consequently,
> each part of section should be construed in
> connection with every other part or section
> to produce a harmonious whole. Thus it is
> not proper to confine interpretation to the
> one section to be construed.

2A Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 46:5 (7th ed.).  In Hartog v. Wasatch Academy, the Tenth Circuit properly employed this principle in its analysis of subsection (b)(4) and pre-amendment subsection (a):

> Title I of the ADA, which governs employment
> relationships, generally provides that "no
> covered entity shall discriminate against a
> qualified individual with a disability

> because of the disability of such individual
> in regard to . . . discharge of employees .
> . . and other terms, conditions, and
> privileges of employment."   42 U.S.C. §
> 12112(a) (1994) (footnote added).  *This
> provision, standing alone, would provide no
> protection to Den Hartog, who does not
> suffer from any disability.  Section
> 102(b)(4) of the ADA, however, defines
> "discriminate" to include "excluding or
> otherwise denying equal jobs or benefits to
> a qualified individual because of the known
> disability of an individual with whom the
> qualified individual is known to have a
> relationship or association."* 42 U.S.C. §
> 12112(b)(4) (1994) (emphasis added) (the
> "association provision").

129 F.3d 1076, 1081-82 (10th Cir. 1997) (emphasis added).

Accordingly, the Tenth Circuit did not negate any statutory

provision, but harmonized these two statutory provisions, as

principles of statutory construction demand.

Third, the amendment should be applied retroactively, in

any event.  The determination of whether the amendment to

subsection (a) applies retroactively turns on whether the

amendment was a "clarifying amendment" or a "substantive

amendment." As explained in Sutherland,

> courts presume that provisions added by [an]
> amendment which affect substantive rights
> are intended to operate prospectively. Where
> the change in the law is 'substantive'
> rather than 'procedural,' a presumption of
> prospectivity can be rebutted only by the
> act itself. . . . . However . . . when the
> purpose of amendment is to clarify the
> meaning of an earlier enactment, . . .
> provisions added by amendment that affect
> procedural rights—legal remedies—apply to

> all cases pending at the time of its
> enactment and all those commenced
> subsequently. This is true whether the
> substantive rights sought to be enforced
> accrued prior or subsequent to the
> amendment, unless a vested right would be
> impaired by the amendment.

1A Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 22:36 (7th ed.); see also Brown v. Thompson, 374 F.3d 253, 259 & n.2 (4th Cir. 2004) (citations omitted).  In other words, a clarifying amendment is given retroactive effect, while a substantive amendment is not.  The amendment to subsection (a) was clearly intended to resolve the conflict with subsection (b)(4), and was not substantive.  Thus, it applies retroactively.

In sum, the Court finds that the language of § 12112, when analyzed under these principles of statutory construction, clearly and unambiguously permits a cause of action for pre-2009 associational discrimination, and this Court "must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984).

Additionally, this construction is consistent with the expert view of the EEOC, the federal agency administering the law in its regulations:

> It is unlawful for a covered entity to
> exclude or deny equal jobs or benefits to,
> or otherwise discriminate against, a

9

> qualified individual because of the known
> disability of an individual with whom the
> qualified individual is known to have a
> family, business, social or other
> relationship or association.

29 C.F.R. 1630.8. The regulation was promulgated in 1991, long

before the amendment to § 12112. See 56 F.R. 35726 (1991).

Thus, even if § 12112 was ambiguous on its face prior to 2009

(and, again, the Court concludes that it was not), this Court

would defer to EEOC expertise as expressed in 29 C.F.R. 1630.8

and conclude that Congress intended a cause of action for

associational discrimination before 2009. See Chevron, 467 U.S.

at 843 (holding that if a statute is silent or ambiguous, courts

must defer to the administering agency's interpretation of the

statute so long as the interpretation is based on a permissible

construction of the statute).

Finally, several pre-2009 federal appellate decisions have

reached this conclusion, albeit with little discussion. See A

Helping Hand, LLC v. Baltimore County, Maryland, 515 F.3d 356,

363-64 (4th Cir. 2008) (acknowledging that ADA Titles I and III[3]

explicitly permit associational discrimination causes of action,

and holding that Title II also does in certain circumstances);

---

[3] Section 12112(b)(4) is part of Title I of the ADA, which
prohibits discrimination in the employment setting. See 42
U.S.C. §§ 12111-12117. Title II prohibits disability
discrimination in public services. See 42 U.S.C. §§ 12131-
12165. Title III applies to public accommodations for disabled
persons. See 42 U.S.C. §§ 12182-12189.

Fonner v. Fairfax County, VA, 415 F.3d 325, 332-33 (4th Cir.
2005) (acknowledging a cause of action for ADA Titles I and II,
but providing no holding as to Title II); Freilich v. Upper
Chesapeake Health, Inc., 313 F.3d 205, 215 (4th Cir. 2002)
(acknowledging a cause of action for associational
discrimination under ADA Title I, and looking to that provision
for guidance even though suit was brought under Title III);
Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55,
59-61 (4th Cir. 1995) (acknowledging existence of Title I ADA
associational discrimination cause of action, but granting
summary judgment after finding no triable issues of fact as to
the employer's knowledge of alleged disability); Tyndall v.
Nat'l Educ. Centers, 31 F.3d 209, 214 (4th Cir. 1994)
(acknowledging ADA Title I associational discrimination cause of
action but finding no liability under the facts of that case).

     Accordingly, and pursuant to Rule 54(b), the Court's prior
determination as to pre-2009 associational discrimination claims
is hereby revised to permit such claims to proceed.  Consistent
with that revision, defendant's motion for summary judgment as
to Delawder's ADA associational discrimination claim is DENIED.

   **B. Associational Discrimination Under the Rehabilitation
      Act**

     Defendant appears to concede that even though the
Rehabilitation Act does not contain an explicit associational

discrimination clause, the Act does generally permit a cause of action for associational discrimination. (ECF No. 116-1, 5-6) (citing <u>Oliveras-Sifre v. Puerto Rico Dep't of Health</u>, 38 F. Supp. 2d 91, 100 n.3 (D.P.R. 1999), *aff'd*, 214 F.3d 23 (1st Cir. 2000)). However, defendant argues that the prior decision as to *pre-2009 claims* under the ADA also bars Mr. Delawder's *pre-2009 claims* under § 504 of the Rehabilitation Act, 29 U.S.C. § 701, reasoning that "[t]he standards used to determine whether an employer has been discriminated [against] under the Rehabilitation Act are the same standards applied under the ADA." (ECF No. 116-1, 5; <u>see also</u> 29 U.S.C. § 794(d) ("[T]he standards used to determine whether [Section 504 of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990.")).

This argument fails because the prior decision on which it hinges has been revised to permit pre-2009 associational discrimination claims under the ADA. In any event, the prior decision as to the pre-2009 issues was limited to the ADA, (ECF No. 103, 11-14), and rightly so. The language conflict between subsection (b)(4) and the subsection (a) was confined to the ADA. There was no parallel conflict within the Rehabilitation Act. Indeed, the Rehabilitation Act does not even contain an

12

explicit associational discrimination clause. <u>See</u> 29 U.S.C. §
701.  Moreover, and as discussed in Part A, despite that
apparent conflict, the Fourth Circuit acknowledged a cause of
action for pre-2009 associational discrimination under the ADA.
Thus, the Fourth Circuit's recognition of pre-2009 associational
discrimination under the ADA would strongly suggest – indeed
arguably compel - recognition of pre-2009 associational
discrimination under the Rehabilitation Act.[4]  Thus, summary
judgment as to associational discrimination under the
Rehabilitation Act is DENIED.

### C. Associational Discrimination Under Maryland Law

Defendant argues that Mr. Delawder lacks a cause of action
for associational discrimination under the Maryland anti-
discrimination statute, Md. State Gov't Code Ann., § 20-606,
because, unlike the ADA, the Maryland statute does not contain
an explicit cause of action for associational discrimination.
(ECF No. 116-1, 6).  Defendant argues further that § 20-606
refers only to an employer's inability to do some action because
of the *individual's* disability or other salient trait.  However,
defendant provides no authority for this argument.  Mr. Delawder

---

[4] The Court is not aware of any Fourth Circuit decisions
recognizing associational discrimination under the
Rehabilitation Act.  Defendant did not provide any case law, in
any Circuit, to support an argument that the Rehabilitation Act
does not include associational discrimination, before or after
January 11, 2009.

has failed to respond to defendant's position.

In relevant part, § 20-606(a) provides as follows:

> (a) Employers. -- An employer may not:
>
> (1) fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of:
>
> > (i) *the individual's* race, color, religion, sex, age, national origin, marital status, sexual orientation, genetic information, or *disability* unrelated in nature and extent so as to reasonably preclude the performance of the employment . . . .

Md. State Gov't Code Ann., § 20-606(a) (emphasis added).

Maryland courts have hardly explored the question of associational discrimination.  Indeed, the undersigned found only one Maryland case addressing the issue—Gutwein v. Easton Publishing Co., 272 Md. 563, 325 A.2d 740 (1974).  There, the Maryland Court of Appeals held in the context of a race discrimination case that "instances of discrimination in employment involving . . . the termination of a white complainant's employment because of his association with his black fiancée are plainly within the contemplation and coverage of §19(a)[,]" id. at 567, which is the predecessor of § 20-606(a). See 2009 Md. Laws 120. Thus, the Court of Appeals has recognized a cause of action for associational discrimination

under §20-606(a) despite the absence of an explicit associational provision in the statute.

Accordingly, summary judgment on the basis of associational discrimination under Maryland law is DENIED.

### D. Retaliation Claims

Lastly, defendant argues that Mr. Delawder lacks a cause of action for retaliatory conduct in response to Barkhorn's EEOC filing. (ECF No. 116-1, 7).  Mr. Delawder voluntarily retired from PAC on June 30, 2008 because he was suffering from health problems and disliked the work allocation policies. (ECF No. 93-2, 2, 4). The retirement occurred before Barkhorn filed charges with the EEOC for disability and age discrimination on December 17, 2008. Therefore, as a temporal matter, Mr. Delawder could not have been the victim of any retaliatory conduct by PAC in response to the EEOC filing.

Thus, defendant's summary judgment as to Mr. Delawder's retaliation claims is GRANTED.

### III. Conclusion

For the reasons above, the Court DENIES summary judgment as to Mr. Delawder's associational discrimination claims under the ADA, the Rehabilitation Act, and Maryland law, but GRANTS summary judgment as to Mr. Delawder's retaliation claim.


Date: 6/14/12                              /s/

Susan K. Gauvey
United States Magistrate Judge